## KAASA v. MEKLER.
### Patent Appeals No. 3985.

Court of Customs and Patent Appeals;
June 27, 1938.

Pennie, Davis, Marvin & Edmonds, of New York City (Louis D. Forward, of New York City, Clarence M. Fisher, of Washington, D. C., and Raymond F. Adams, of New York City, of counsel), for appellant.

Charles M. Thomas, of Washington, D. C. (Clarence O. McKay, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner of Interferences awarding priority to Mekler upon the two counts involved in an interference declared between applications of the respective parties.

The counts read as follows:

"1. In cracking *petroleum stocks containing a substantial proportion of gasoline* for the production of gasoline fractions of improved anti-knock value, the improvement which comprises supplying the stock to a heating conduit substantially in liquid phase, heating the stock to a high cracking temperature in the heating conduit while flowing therethrough as a stream, discharging the heated stock from the heating conduit substantially in vapor phase, and *maintaining a lower rate of heat transfer per unit of area of said conduit from a point in advance of that at which substantial vaporization begins to the point at which the phase change substantially ceases than immediately beyond the last mentioned point.*

"2. In cracking *petroleum stocks containing a substantial proportion of gasoline* for the production of gasoline fractions of improved anti-knock value, the improvement which comprises supplying the stock to a heating conduit substantially in liquid phase, heating the stock to a high cracking temperature in the heating conduit while flowing therethrough as a stream by heat transferred principally as radiant energy, discharging the heated stock from the heating conduit substantially in vapor phase, and *shielding said conduit from the source of said radiant energy from a point in advance of that at which substantial vaporization begins to the point at which the phase change substantially ceases.*"

For reasons which will appear later, we have italicized certain clauses of the counts.

Mekler is the senior party, his application having been filed September 30, 1932; that of Kaasa was filed November 14, 1932.

An issue in the case is that of the construction of the counts—particularly the limitations italicized in their quotation, *supra*.

It first may be said that the process is for producing "anti-knock" gasoline; that it is one of introducing petroleum stocks (in liquid condition) containing a substantial proportion of gasoline into a heating conduit where, while flowing therethrough, the stock is heated to a high cracking temperature; that the heat, mainly, is supplied radiantly to the conduit from the combustion chamber in which the conduit is located; that the heated stocks are discharged from the conduit substantially in vapor phase, and that from a point in the conduit in advance of the point where substantial vaporization begins to the point where the vapor phase change substantially ceases a lower rate of heat per unit of the conduit's area than the rate supplied to it immediately following the last named point is maintained. Count 2 specifies the producing of this lower rate of heat by shielding that part of the conduit in which such lower rate is desired. The devices of both parties show shielding means for this purpose.

No question of the right of either party to make the counts was presented.

In his preliminary statement, Kaasa alleged actual reduction to practice between January 19, 1932, and February 20, 1932, but his brief before us concedes that upon the evidence presented the earliest date which he can claim for complete reduction to practice is "early in March, 1932." Mekler claimed conception in March 1931, and constructive reduction to practice by filing his application September 30, 1932.

The evidence of both parties was presented in the form of stipulations entered into by counsel to each of which stipulations were attached various exhibits upon which the decisions below were principally based, in the light of the construction given the counts.

The Examiner of Interferences held that Kaasa's record failed "to clearly establish either conception or reduction to practice prior to the party Mekler's record date." To Mekler he awarded conception as of December 2, 1931, and found that he was diligent in reducing to practice, saying that even if Kaasa should, upon appeal, be awarded reduction to practice in February 1932, Mekler "must still prevail in view of his prior conception and no lack of diligence in constructively reducing the invention to practice."

The award of conception to Mekler by the Examiner of Interferences was based upon Mekler's treatment of naphtha. With this award the board disagreed, being of opinion that the counts required reading in the light of Kaasa's application, where they originated.

The application of Kaasa in defining what was meant by the phrase "petroleum stocks containing a substantial proportion of gasoline" says:

" * * * I refer to stocks of which more than 40% boils off up to 420°F. at atmospheric pressure and intend to include stocks of which as much as 90% or more boils off at 420°F. under atmospheric pressure. In referring to high cracking temperatures, I refer to cracking temperatures upwards of 890°F. * * *."

Because of its view that the phrase "substantial proportion of gasoline" should be read in light of this definition, the board, saying that "Naphtha does not necessarily contain the amount of gasoline constituents indicated in the counts," held that Mekler did not, on December 2, 1931, show conception as to the "substantial quantity of gasoline," and restricted him to his filing date of September 30, 1932, for both conception

and reduction to practice. The award of priority to him by the Examiner of Interferences nevertheless was affirmed, because Kaasa also was held to be restricted to his filing date of November 14, 1932.

This holding, adverse to Kaasa, was predicated upon the board's finding respecting the limitations defined in the last clauses of the counts italicized by us in their quotation, supra. The construction given these limitations was in harmony with that of the Examiner of Interferences and, seemingly, in harmony with the holding of a Primary Examiner in an ex parte proceeding made a part of the record here.

It may be here said that the application of Kaasa was assigned to a company with which a party by the name of Herthel was associated. This is said by way of explaining the appearance of the name of Herthel in the quotation hereinafter made.

Discussing the limitations in last clauses of the counts, italicized, supra, the board said:

"We are * * * of the opinion that the limitation as to 'maintaining a lower rate of heat transfer per unit of area of said conduit from *a point in advance* of that at which substantial vaporization begins to the point at which the phase change substantially ceases than immediately beyond the last mentioned point' is a material limitation and must be proved.

* * * * * * *

"We have examined the Kaasa record carefully but we find no documentary evidence that Kaasa or his coworkers had any conception prior to the filing date of the Kaasa application of maintaining the lower rate of heat transfer between the specific points stated in the counts. Herthel appears from Kaasa's Exhibit 22b to have disclosed the general idea of some limited range of reduced heat transfer, but this disclosure is too general to satisfy the counts. Herthel's letter (Exhibit 25) is likewise defective in this respect.

"The note book records, blueprints and telegrams leave too much to the imagination if one is to decipher from these exhibits the invention stated in the counts. The correspondence between Herthel and Adams would lead one to believe that up to the time of preparing the application Adams thought Herthel was the inventor and was in doubt as to the critical point. Herthel stated that Kaasa was the inventor of the shielding but neither Herthel nor Kaasa had, so far as we have been able to

determine from the Kaasa record, a conception or reduction to practice of the exact relative location of the shielding and the two points of the issue prior to the filing date of the Kaasa application."

As we understand the foregoing, it means simply that Kaasa was found not to have proven (prior to his filing date) conception or reduction to practice of a system wherein there was a shielding (or any equivalent operation) of the conduit (consisting of a series of connected tubes) over a portion of same, the beginning of the shielding being at a point on the conduit in advance of the point where the oil stock had reached a temperature at which substantial vaporization began and ending at the point on the conduit where vaporization ("the phase change") substantially ceased.

It is the contention of Kaasa upon this point that the interpretation of the counts so made was narrow and artificial, he going so far as to urge that under such interpretation an operation is defined "with respect to which neither the Kaasa application nor the Mekler application contains a disclosure adequate to enable the man skilled in the art accurately to ascertain the point at which the protected zone (i. e., the shielded zone) should begin, or the point at which it should terminate."

In a petition for reconsideration filed with the board, this contention, along with others, was stressed at great length. In denying that petition, the board said:

"The petitioner argues in effect that the counts are meaningless unless construed in the light of his application and that points of the counts refer to a point in the heating conduit at which vaporization has proceeded to such a degree that there will be enough segregation (of high boiling hydrocarbons from low boiling hydrocarbons) to make itself evident by the tendency of the conduit to overheat adjacent the inlet end of the heating coil when processing very low boiling point stocks, and a point in advance of which vaporization has proceeded to an extent such that no further vaporization is required to prevent segregation (of high boiling hydrocarbons from low boiling hydrocarbons) from continuing to take place to an extent such that it will make itself evident by a continuing tendency of the conduit to overheat.

"The relative rates of heat transfer at certain points, as stated in the count, are clear from the Mekler disclosure and are stated in an equivalent manner on page 7 of the Kaasa application.

"We see no reason for construing the counts as to the features mentioned by the petitioner, who has not questioned Mekler's right to the counts as they are. Mekler does not describe the invention as the petitioner contends the counts should be construed, but refers to the prevention of the formation of coke in the tubes."

Kaasa filed a second petition for reconsideration with the board, which also was denied with the statement:

"Kaasa's renewed petition presents nothing that has not been heretofore considered by this Board. As to whether the counts define the invention of either party, this is an ex parte matter."

The brief on behalf of Kaasa before us is quite a voluminous one. It contains many repetitions of arguments—doubtless made for the purpose of emphasis—and goes in great detail into technical operations. To follow it step by step would render this opinion unduly and unnecessarily long, and we shall confine ourselves to such contentions as, in our opinion, after studying the entire record in the light of the briefs and oral arguments, are really vital to the decision of the case.

The primary issue relates to the board's interpretation of the counts, the correctness of which is challenged by Kaasa. His brief says:

"Kaasa acknowledges that the evidence submitted on his behalf fails to establish either conception or reduction to practice of the operation defined by the issue counts *when they are construed as they appear to have been construed by the Board of Appeals*. However, Kaasa urges that when the issue counts are *properly construed* they *do* find support *in substance* both in the Mekler application and in the Kaasa application in which they originated, and that *when they are given this same proper construction* the Kaasa evidence clearly and conclusively shows conception and reduction to practice by Kaasa as of a date long prior to the earliest date of conception to which the party Mekler is entitled."

The board's interpretation and our understanding of same has been given, *supra*. The brief on behalf of Kaasa says:

"It will be noted that these claims [counts] do not *exactly* define either the beginning or the end of the zone to be shielded (or the zone in which the rate of

heat input is to be reduced in some equivalent manner). For example the shielded zone may start with the initial heating tube even though vaporization might not begin until the oil reaches the second or third heating tube and even though the amount of vaporization might not become *substantial* until the oil reaches some subsequent tube. The first few heating tubes are *not required* to be shielded but they *may be* shielded. It is sufficient that the beginning of the shielded zone be 'in advance of' that point at which *substantial* vaporization begins. *'Substantial* vaporization' as it is used in this connection, both in the claims and in the specification of the Kaasa application, means merely *that amount of vaporization which will result in material segregation of high boiling tar and gum-forming constituents so that abnormal 'overheating of the conduit' would occur in the absence of shields.*

"There is nothing in the disclosure of the Kaasa application to indicate whether the term *'substantial* vaporization' as used in this connection means any definite arbitrarily chosen percentage of vaporization, such for example as 1% of vaporization, 5% of vaporization, 10% of vaporization or some other amount of vaporization. The query arises how much vaporization can one have before 'substantial vaporization' begins. Thus if, the expression *'substantial* vaporization', where used in the counts here in issue to define the point in advance of which the shielding must begin, is not construed in the light of the Kaasa application in the manner above explained, then both of the issue counts become so ambiguous that they are practically meaningless. Further, they become exceedingly narrow. Certainly they do not define the *substance* of the invention disclosed in the Kaasa application unless they are construed in the light of the Kaasa application in the manner above explained.

"In a similar manner the issue counts define the point *to which the shielding must extend* not in any *exact* terms but merely as that point 'at which the phase change *substantially* ceases'. Construed in the light of the Kaasa application in which the issue counts originated (or for that matter construed in the light of the Mekler application as hereinafter pointed out *post* 21-22), this means merely that the shielding must ex-tend to *the point at which any oil that has not as yet been vaporized will be picked up and carried in the form of liquid particles uniformly dispersed in the vapor as a 'fog or mist',* so that there will no longer occur the segregation and deposit of high boiling hydrocarbons (tar and gum-forming constituents) which form the heat-insulating layer on the inner surface of the heating conduit that causes the outer metal temperatures to become abnormally high in the absence of shielding. Beyond this point there may be gradual further vaporization of the fog or mist-like particles of liquid, but such further vaporization is not accompanied by *segregation* of the high boiling hydrocarbons to such an extent that they will adhere to the inner surface of the heating tubes and thus cause abnormal overheating."

It is the claim of Kaasa that, when given the construction for which he so contends, certain activities carried out at a plant in Chicago, Illinois, with a still, referred to as a "612 still," in March 1932, as shown by certain exhibits, constituted reduction to practice.

Even this contention is challenged by the party Mekler in the argument before us, and we entertain doubt, particularly in view of the discussion of the matter by the Examiner of Interferences (although his discussion was on the basis of a seemingly different interpretation), whether it could be sustained upon the record, but, however this may be, it is not necessary to adjudicate that issue.

We are of the opinion that the construction of the counts by the tribunals below was a normal and intelligent one in which the ordinary rules of construction were followed, the language used in the counts being given an interpretation in accordance with its common meaning when applied to the art involved. The interpretation is not regarded as being artificial or as being any narrower than the language requires.

In this view of the case and in view of Kaasa's concession, above quoted from his brief, other questions argued at length before us need not be determined.

The decision of the Board of Appeals is affirmed.

Affirmed.